# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

## MARCH TERM, 1928

---

### ELLIS v. THE STATE.

1. The verdict is supported by evidence.
2. The excerpts from the charge of the court, to which exceptions are taken in the motion for a new trial, are not erroneous for any reason assigned, and show no cause for the grant of a new trial.

No. 6119. MARCH 14, 1928.

Murder. Before Judge Pomeroy. Fulton superior court. June 11, 1927.

*J. S. Hall*, for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, John H. Hudson,* and *J. W. LeCraw*, contra.

RUSSELL, C. J. Henry Ellis was indicted for the offense of murder, it being alleged in the indictment that he killed Johnie Taylor by cutting and stabbing him with a knife. Upon the trial the accused was found guilty, without recommendation. His motion for a new trial was overruled, and the exception is to the judgment refusing a new trial. The defendant made a statement to the jury, but introduced no testimony. The testimony in behalf of the State was to the effect that Johnie Taylor was at a gathering at a house known as number 76 Brown's Alley. He had been picking what some witnesses called "his box." Some of the witnesses denominated it as a guitar, and others as a banjo. He placed his box by a chair and asked Jasper Ellis (a brother of the accused and jointly indicted with him) for a drink of whisky or toddy.

---

Criminal Law, 16 C. J. p. 983, n. 27; p. 1002, n. 21.
Homicide, 30 C. J. p. 310, n. 25; p. 367, n. 11; p. 392, n. 88.

Thereupon Jasper reached back in his pocket and pulled out a pistol; whereupon Henry, the accused, said, "Don't shoot the son of a ——. Let me cut his throat. . . And he had a knife in his hand, and he run up to him and made one lick . ." A witness testified: "Henry and Jasper were arguing, talking about a quart of whisky and he [Henry] said, 'Don't give away my liquor.' Johnie Taylor wasn't arguing at all. He asked for it, and Henry told Jasper: 'Don't give my liquor away. Hell, I got it to drink.' Johnie Taylor wasn't arguing when I got there. He just asked for a drink of whisky, and Henry told Jasper not to give away his liquor. I suppose the reason he [Jasper] drew a gun on him was because he asked for a drink of whisky. I know he drew a gun, but I don't know why." Another witness testified practically to the same effect, and swore that when Henry said, "I will cut his throat," "he had done cut it, and Johnie went out the back, and Henry and Jasper went out the front door. When I seen Johnie any more he was lying out in the yard, dead. When he got cut we all went out to see about it, and he was lying out in the yard when we got there." This witness further testified that there was no trouble between these boys. The undertaker testified that the deceased had but one wound, which started on the left side of the throat and cut both jugular veins, the carotid artery and those veins. The officer who went to Columbus, Georgia, for the defendant, who had been arrested there, testified that on the way back to Atlanta the defendant admitted the cutting, but said the deceased was after him with an ice-pick, and he cut him with a knife. "I believe I asked him if it was a large or small knife, and he said really it was not a large knife and it was not a very small one." This knife which the defendant subsequently admitted was the knife with which the cutting was done was admitted in evidence without objection. No witness saw the deceased with an ice-pick at the time of the homicide, and none was found on the premises after the killing occurred. The undertaker, who reached the body while it was still warm, found nothing on it except a guitar-picker, a long skeleton-key, a pair of glasses, and part of a deck of cards, "in his right-hand jumper pocket."

In his statement the defendant said: "Well, Judge, and gentlemen of the jury, the night this killing taken place this fellow and this Will Davis and the girl that he goes with come to this house,

and after they came in we were all in there dancing, and this boy was playing the box, and Will Davis come in there and whispered to this Johnie Taylor, and they all commenced going out of the house, and after they went out of the room this negro put the box down, and I started out of the door, and he got right in the door to keep me from going out, with an ice-pick, and he shoved me back in the room, and I says, 'Don't do that, I ain't here for any trouble. I'm over here just to have a good time,' or something like that; and I started out again by him, and he grabs me in the collar, and when he grabs me in the collar I stuck my knife in him, and he turned me loose and went on out the back door and I went out the front. If he had never grabbed me, but after I seed the ice-pick I knowed then he was going to stick me with the ice-pick if I didn't cut him, and when I cut him he just turned me loose and walked off from me, and I went out the front door and he went out the back door." In rebuttal to the defendant's statement witnesses were introduced on the part of the State, who testified they saw the cutting and that the deceased "did not have any ice-pick flourishing it around. He didn't have anything."

1. From the nature of the testimony the jury was authorized to find the defendant guilty; and the error, if any, in overruling the motion for a new trial must rest upon the grounds in which error is assigned upon excerpts from the charge of the court.

2. In the first special ground it is insisted that there was no evidence adduced which authorized the judge to charge upon the subject of admissions, and that the instruction upon this subject "was calculated to lead the jury to believe that some confession or incriminatory admission had been made by the defendant, when as a matter of fact the record discloses no such admission or confession." When considered in connection with the charge as a whole, the instruction of which complaint is made is free from error and was favorable to the accused. The court charged: "If you find that any statement or admission with reference to any fact in this case has been made by the accused, the court instructs you that an admission applied to a criminal case is a statement by the defendant of a fact or facts pertinent to the issue, or tending, in connection with other facts and circumstances, to prove the guilt of the accused, but which of themselves are not sufficient to authorize a conviction. An admission is a circumstance which

requires the aid of testimony to authorize a reasonable conclusion of guilt. All admissions should be scanned with care and received with great caution." The testimony of officer Langford to the effect that the defendant admitted cutting the deceased, and stated it was because he was after him with an ice-pick, was wholly uncontradicted, not even being referred to by the defendant in his statement. It was the duty of the judge in these circumstances to instruct the jury "that all admissions should be scanned with care and received with great caution." The judge did not tell the jury whether the admission was inculpatory or exculpatory, but there was in the record the admission of the defendant that he cut the deceased and uncontradicted evidence that the person cut had died almost immediately after the cutting. It would have been error to charge upon the subject of confessions, because the defendant made no confession. But he admitted the cutting; and it was for the jury to say whether the explanation of the cutting given by the accused was sufficient to justify or excuse the use of the knife, or whether the knife was used by the defendant under such circumstances that the killing could not have been more than voluntary manslaughter. In other words, the court should have charged, as he did, upon the subject of voluntary manslaughter, and upon the law applicable to justifiable homicide; and therefore it was necessary for him to define the legal meaning of an admission. We find no error in the definition of an admission as contained in the excerpt above quoted, especially when considered in connection with the further charge that "If you find in this case that the defendant admitted the killing, but coupled with said admission the declaration which, if you believe it, showed justification, no presumption that the homicide was murder arises from such admission."

3. It is insisted that the court erred in instructing the jury as follows: "The court instructs you, with reference to killing in self-defense: if after persuasion, remonstrance, or other gentle measures used a forcible attack and invasion of the property or habitation of another can not be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property, habitation, or person of another; but it must appear that such killing was absolutely necessary to prevent such an attack and invasion, and that a serious injury was intended or

might accrue to the person, property, or family of the person kill-ing." It is contended by the plaintiff in error that this instruc-tion should not have been given, because the doctrine is applicable only in cases where there is a mutual intent to fight, and that the evidence in this case does not disclose such mutual intent. It is true that no witness saw any evidence of an intent to fight on the part of the deceased, but, as appears from the statement of the accused, which we have quoted in full, the deceased did evince a desire to fight the defendant and assaulted him. It is true that the defendant in his statement did not say that he thought his life was in danger, but he stated that the deceased was trying to pre-vent him from going out of the door, and shoved him back and at-tempted to use an ice-pick and was only prevented from doing so because he cut him with his knife. In the state of the record the exception is without merit. The plaintiff in error admits that the statement of law is correct in the abstract. We can not concur in the contention that it was inapplicable to the defense or calculated to confuse the jury. It is true that it is not applicable to the defense of justifiable homicide resting upon the fears of a reason-able man that a felony is about to be committed upon him. But the court in another portion of the charge clearly presented this view of the law; and then, although the defendant did not state that he believed at the time that his life was in danger, and him-self made a case of mutual intent to fight, the court gave the law of voluntary manslaughter by which a homicide may be reduced, if there is a mutual intent to fight, from murder, which the law presumes it to be where an unlawful killing is shown, to a lower grade. What has just been said applies also to the third special ground of the motion for a new trial, where the movant complains that the judge gave in charge to the jury sections 73 and 75 of the Penal Code.

4. In the fourth ground complaint is made that the judge charged the jury that "The defendant enters upon the trial of this case with the presumption of innocence in his favor, and that presumption remains with him unless and until you gentlemen be-lieve beyond a reasonable doubt that he is guilty." The complaint is that the charge did not advise the jury that their belief of the guilt of the accused beyond a reasonable doubt must be based upon the evidence, and the omission of reference to the evidence is al-

leged to be the error.  We are of the opinion that this exception is without merit, because, in the sentence of the charge immediately following the excerpt which we have quoted, the judge correctly instructed the jury that a reasonable doubt was "one which grows out of the evidence, or a conflict in the evidence, or a lack of evidence," thus leaving no chance for there to be any doubt in the mind of the jury that the belief to which he was referring must be based alone upon evidence.  Further, if the language of the judge could have impressed the jury with the thought that they might believe anything outside the evidence, then it was more favorable to the accused than he was entitled to have, because the accused was presumed to be innocent and he remained so until the jury believed beyond any reasonable doubt he was guilty, which would relieve the jury from believing any evidence introduced by the State to show his guilt, if they saw fit to believe in his innocence under a mere presumption.

*Judgment affirmed.   All the Justices concur.*